UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:                                               Chapter 13

Wendy Elassal,                                       Case Number 21-42801

        Debtor.                                      Hon. Mark A. Randon

_____/

**OPINION AND ORDER OVERRULING
TRUSTEE'S OBJECTION AND DENYING PLAN MODIFICATION**

## I.    INTRODUCTION

Housing prices fluctuate over time, as do the relative financial risks and benefits of home

ownership.  Ideally, home values appreciate.  Yet history cautions, there are no guarantees.

Reliably predicting the real estate market's ebbs and flows ranges from difficult to a fool's

errand.

In 2021, Wendy Elassal ("Debtor") filed chapter 13 bankruptcy, committing three years

of disposable income to keep her assets—including a $250,000 home—with $228,000 of liens.

Although unsecured creditors would have received nothing in a hypothetical Chapter 7

liquidation (Debtor could have exempted the remaining home equity), Debtor's Second

Amended Plan proposed to pay a minimum of $1,277.16 towards $93,805.83 in general

unsecured claims.  This plan was confirmed without objection.

Who could have predicted, in less than two years, Debtor's home would sell for

$435,000, netting $177,695.13 in proceeds after full payment of the liens? Not the Trustee, who

consented to confirmation; nor the unsecured creditors, who could reasonably have decided

1

something was better than nothing at the time. Likely not even Debtor, who agreed to the modest payment to unsecured creditors, whether her home appreciated or *depreciated*.

Through either her uncanny real estate market expertise or good fortune, Debtor's decision to file and remain in Chapter 13 has "paid off."[1] But for whom? Debtor wants to keep the money: Having now paid her secured creditors, she seeks Court approval to use all of the sale proceeds to buy a new home—for cash—while making her promised dividend to unsecured creditors over the remainder of her plan. The Trustee's objection and proposed plan modification urge a different outcome: Debtor may only keep what remains *after* unsecured claimants receive full payment—anything less would be inconsistent with the code and evidence Debtor's lack of good faith. The Court disagrees. Superior discernment or luck is neither gamesmanship nor an absence of good faith. Because the Court determines: (1) the estate replenishment theory best harmonizes 11 U.S.C. §§ 1306 and 1327, Debtor's home vested in her at confirmation; (2) the sale proceeds, derived from post-confirmation appreciation of Debtor's pre-petition real property, cannot be untethered from the real property itself, and do not refill the estate; and (3) the sale proceeds, particularly when escrowed for direct rollover into a new home purchase, are not "disposable income"—Debtor may use the sale proceeds to buy a new residence. The Trustee's objection is **OVERRULED**, and her plan modification is **DENIED**.

---

[1] Many chapter 13 cases end unsuccessfully: without a discharge, debtors face the resumption of accumulated interest on their debts, which has compounded during their bankruptcies and, having paid a fee to their attorneys and trustees, often find themselves in worse financial shape than before they filed. *See Harris v. Viegelahn*, 575 U.S. 510, 514, 135 S. Ct. 1829 (citing Porter, *The Pretend Solution: An Empirical Study of Bankruptcy Outcomes*, 90 TEXAS L. REV., 103, 107–11 (2011)).

## II.     JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(b) and 157(a) and (b), and is authorized, by standing reference from the United States District Court, to resolve the contested matter as a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## III.     PROCEDURAL AND FACTUAL BACKGROUND

Debtor filed Chapter 13 bankruptcy on March 31, 2021. A Judgment of Divorce provided Debtor's former spouse an interest in the marital home in Van Buren Township, Michigan (the "Van Buren Property"). Debtor listed her interest on Schedule A/B and valued the Van Buren Property at $250,000, which was unchallenged. She also disclosed three outstanding liens in favor of: (1) Independent Mortgage in the amount of $180,000; (2) Debtor's divorce attorney for $3,597.40; and (3) her former spouse in the amount of $48,000. Debtor listed the remaining $22,000 equity as subject to her federal homestead exemption.

The Judgment of Divorce awarded Debtor the Van Buren Property with three conditions: (1) Debtor's former spouse would make 24 monthly mortgage payments in lieu of child and spousal support; (2) Debtor would sell or refinance the Van Buren Property by December 31, 2022, to pay the former spouse's equity position; and (3) Debtor would be responsible for any mortgage payments after January 1, 2023.

On July 31, 2021, the Court entered an Order Confirming Debtor's Plan. On February 2, 2023, after the deadline to sell or refinance, Debtor filed a motion to sell the Van Buren Property. The Trustee objected to the proposed sale to Debtor's friend for $275,000; Debtor filed an amended motion to sell the Van Buren Property. This time, she sought approval to sell

3

it for $435,000 through an arms length transaction and to use all of the proceeds from the sale, $173,655.93 (the "Sale Proceeds"), to purchase a new residence. The Trustee objected. She argued Debtor was first required to use $94,000 of the Sale Proceeds to pay her unsecured creditors in full. Debtor and Trustee stipulated to the entry of an order approving the sale, requiring Debtor's attorney to retain the Sale Proceeds in attorney's client trust ("IOLTA") account until further order of the Court. On May 8, 2023, Debtor filed a motion to use the Sale Proceeds to purchase a new residence. The Trustee objected and filed a plan modification, again proposing Debtor use $94,000 of the Sale Proceeds to pay unsecured creditors in full.

After hearing the motions, the Court ordered supplemental briefing. On July 21, 2023, Debtor filed her Post-Hearing Response Brief ("Debtor's Brief"), and the Trustee filed her Supplemental Brief in Support of Trustee's Proposed Post-Confirmation Plan Modification ("Trustee's Brief" and collectively, the "Briefs").

## IV.     APPLICABLE LAW AND ANALYSIS

The Court recognizes that the Briefs cite to competing persuasive–but not controlling– authority to support their respective positions. The Court first adopts a common position that appears in both Briefs—implementation of the Estate Replenishment approach to harmonize 11 U.S.C. §§ 1306 and 1327. *See In re Marsh*, 647 B.R. 725 (Bankr. W.D. Mo. 2023) (relied upon in Trustee's Brief); *see also In re Larzelere*, 633 B.R. 677 (Bankr. D. N.J. 2021) (relied upon in Debtor's Brief). The Court then leans into Debtor's argument, finding the post-confirmation Sale Proceeds belong to Debtor. *See e.g., McDonald v. Burgie (In re Burgie)*, 239 B.R. 406 (B.A.P. 9th Cir. 1999); *In re Euler*, 251 B.R. 740 (Bankr. M.D. Fla. 2000); *In re Larzelere*, 633 B.R. 677 (Bankr. D. N.J. 2021); *In re Mobley*, No. 11-49079, 2011 WL 6812551 (Bankr. E.D.

4

Mich. Dec. 1, 2011); *In re Ash'shadi*, No. 04-55924, 2005 WL 1105039 (Bankr. E.D. Mich. May 6, 2005).

### A. Reconciliation of 11 U.S.C. §§ 1306 and 1327 is Best Accomplished Though the Estate Replenishment Approach

This Court is not the first to grapple with fashioning an approach which harmonizes the competing statutory directives of sections 1306 and 1327. *See e.g., In re Tarby*, 2012 WL 1390201 (Bankr. D. N.J. Apr. 20, 2012); *In re Scholl*, 605 B.R. 163 (Bankr. S.D. Ohio 2019); *In re Baker*, 620 B.R. 655 (Bankr. D. Colo. 2020); *In re Clouse*, 446 B.R. 690 (Bankr. E.D. Pa. 2010).[2] This Court finds the Estate Replenishment approach best reconciles these code sections.

Sections 541 and 1306 primarily govern property of the chapter 13 bankruptcy estate. 11 U.S.C. §§ 541 and 1306. Section 541 defines estate property as "all legal or equitable interests of the debtor in property as of the commencement of the case" and "[p]roceeds, product, offspring, rents, or profits of or from property of the estate[.]" 11 U.S.C. § 541(a)(1), (6). Section 1306 incorporates section 541 and captures additional property in chapter 13 cases:

(a)     Property of the estate includes, in addition to the property specified in section 541 of this title—

---

[2] *In re Larzalere*, 633 B.R. at 681-82 (Bankr. D. N.J. 2021) ("The Circuit Courts of Appeals that have addressed the issue are not in agreement. *See In re Jones*, 420 B.R. 506, 515 (B.A.P. 9th Cir. 2009) *aff'd on other grounds*, 657 F.3d 921 (9th Cir. 2011) (following estate termination approach); *Telfair v. First Union Mortg. Corp*., 216 F.3d 1333, 1339-40 (11th Cir. 2000) (estate transformation); *In re Barbosa*, 236 B.R. 540, 550 (Bankr. D. Mass. 1999) *aff'd sub nom*, *Barbosa v. Solomon*, 243 B.R. 562 (D. Mass. 2000) *aff'd*, 235 F.3d 31 (1st Cir. 2000) (following estate replenishment approach); *In re Talbot*, 124 F.3d 1201, 1208 (10th Cir. 1997) (stating without discussion that house revested in debtors at confirmation pursuant to section 1327(b)); *Black v. United States. Postal Serv. (In re Heath)*, 115 F.3d 521, 524 (7th Cir. 1997) (estate transformation). *See also In re Goldston,* 627 B.R. 841, 864 (Bankr. D.S.C. 2021) (stating that 'The Fourth Circuit has expressly avoided reconciling the interplay between §§ 1306(a) and 1327(b).'); *Sec. Bank of Marshalltown v. Neiman*, 1 F.3d 687, 690 (8th Cir. 1993) (holding that estate exists after confirmation even if it holds no property")).

(1)     all property of the kind specified in such section that the debtor acquires
        after the commencement of the case but before the case is closed,
        dismissed, or converted to a case under chapter 7, 11, or 12 of this title,
        whichever occurs first; and

(2)     earnings from services performed by the debtor after the commencement
        of the case but before the case is closed, dismissed, or converted to a case
        under chapter 7, 11, or 12 of this title, whichever occurs first.

Read together, sections 541 and 1306 appear to encompass all property of the estate that
a debtor owns as of the petition date and any property acquired during the pendency of a chapter
13 case before closure or conversion. In contrast to sections 541 and 1306, section 1327 vests all
estate property in the debtor at confirmation and creates the crux of the issue here.

Section 1327, in pertinent part, states:

(b)     Except as otherwise provided in the plan or the order confirming the plan,
        the confirmation of a plan vests all of the property of the estate in the
        debtor.

(c)     Except as otherwise provided in the plan or in the order confirming the
        plan, the property vesting in the debtor under subsection (b) of this section
        is free and clear of any claim or interest of any creditor provided for by
        the plan.[3]

But given these competing code sections, what if any, property remains part of the
bankruptcy estate post-confirmation? According to section 1327, "confirmation of a plan vests
*all of the property of the estate in the debtor*" and "property vesting in the debtor under [section
1327] is free and clear of any claim or interest of any creditor provided for by the plan." 11
U.S.C. § 1327(b), (c) (emphasis added). However, section 1306 seemingly stands in direct
conflict with section 1327 posing "estate property includes . . . property of the kind specified in

---

[3]Under section 1327(b), the Plan or Order Confirming the Plan could have included a provision
excluding any property appreciation from revesting in Debtor. *See e.g., In re Euler*, 251 B.R.
740, 747 (Bankr. M.D. Fla 2000).

6

section 541 [and] *all property of the kind specified in such section that the debtor acquires after the commencement of the case* but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first." 11 U.S.C. § 1306(a) (emphasis added).

A reading of the plain language of section 1306(a) appears to render all property until "the case is closed, dismissed, or converted," property of the estate. On the other hand, a reading of the plain language of section 1327(b) appears to vest all property with the debtor post-confirmation. Moreover, section 1327(c) provides that this property is free and clear of any claims. Harmonizing the inharmonious is a tall order. And courts must do so in light of a Supreme Court's recent reminder that "'[t]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.'" *City of Chicago v. Fulton*, 141 S. Ct. 585, 591 (2021) (citing *Yates v. United States*, 574 U.S. 528, 543 (2015)). Faced with this task, "several courts [] suggest [sections 1306 and 1327] . . . may even be 'impossible to reconcile.'" *In re Scholl*, 605 B.R. at 173 (citing *In re Rangel*, 233 B.R. 191, 194 (Bankr. D. Mass. 1999); *see also In re Barbosa*, 236 B.R. 540, 545 (Bankr. D. Mass. 1999)). The Court believes reconciliation, while difficult, is not impossible, and will add another opinion to the growing discord.

Courts have utilized at least five different theories or "approaches" in their attempts to reconcile sections 1306 and 1327: the Estate Termination approach;[4] the Estate Transformation

---

[4] *In re Baker*, 620 B.R. 655, 663 (Bankr. D. Colo. 2020) ("At confirmation, the estate ceases to exist and all property of the estate, whether acquired before or after confirmation, becomes property of the debtor.").

approach;[5] the Conditional Vesting approach;[6] the Estate Preservation approach;[7] and the Estate

Replenishment approach.[8]  *In re Marsh*, 647 B.R. at 730–34; *In re Baker*, 620 B.R. at 663–64

(listing all five approaches).

Many courts have determined—and this Court agrees—that both the Estate Termination

and Estate Preservation approaches "render another part of the statutory scheme superfluous."

*City of Chicago*, 141 S. Ct. at 591.  The Estate Termination approach draws a sharp line at

confirmation, vesting all property with debtor, and the "estate ceases to exist." *In re Baker*, 620

B.R. at 663 (citing KEITH M. LUNDIN, LUNDIN ON CHAPTER 13 § 120.3, ¶ [9] (citations omitted);

*see also In re Rangel*, 233 B.R. 191 (Bankr. D. Mass. 1999).  This approach allows section 1327

to swallow up section 1306.  The Estate Preservation approach proposes the opposite–section

1306 engulfing 1327.

> The vesting of property in the debtor under § 1327(b) does not remove any
> property from the chapter 13 estate, whether acquired before or after
> confirmation; property remains in the estate until the case is closed,

---

[5] *Id*. ("At confirmation, all property of the estate becomes property of the debtor except property
essential to the debtor's performance of the plan; the Chapter 13 estate continues to exist, but it
contains only property necessary to performance of the plan, whether acquired before or after
confirmation.").

[6] *Id*. at 664 ("At confirmation, vesting gives the debtor an immediate and fixed right to use estate
property, but that right is not final until the debtor completes the plan and obtains a discharge.").

[7] *Id*. at 663–64 ("The vesting of property in the debtor under § 1327(b) does not remove any
property from the chapter 13 estate, whether acquired before or after confirmation; property
remains in the estate until the case is closed, dismissed, or converted. The debtor's rights and
responsibilities with respect to property of the estate may change somewhat at confirmation, but
the existence and composition of the estate are not disturbed by § 1327(b).").

[8] *Id*. at 663 ("At confirmation, all property of the estate becomes property of the debtor; the
Chapter 13 estate continues to exist and 'refills' with property defined in § 1306 that is acquired
by the debtor after confirmation, without regard to whether that property is necessary to
performance of the plan.").

8

> dismissed, or converted. The debtor's rights and responsibilities with
> respect to property of the estate may change somewhat at confirmation, but
> the existence and composition of the estate are not disturbed by § 1327(b).

*In re Baker*, 620 B.R. at 663–64 (citing LUNDIN at § 120.3¶ [9]).

Because the Estate Termination and Preservation approaches effectively render the competing code section superfluous, this Court adopts a moderate approach, recently favored by other courts faced with this issue–the Estate Replenishment approach. *See e.g., City of Chicago v. Fisher (In re Fisher)*, 203 B.R. 958, 962–63 (Bankr. N.D. Ill. 1997); *Fritz Fire Protect. Co. v. Wei-Fung Chang (In re Chang)*, 438 B.R. 77, 83 (Bankr. M.D. Pa. 2010); *see also In re Marsh*, 647 B.R. 725 (Bankr. W.D. Mo. 2023); *In re Larzelere*, 633 B.R. 677 (Bankr. D. N.J. 2021; *In re Willard*, 2023 WL 2601769 (S.D.N.Y. Mar. 22, 2023)).

The Estate Replenishment approach provides "[a]t confirmation, all property of the estate becomes property of the debtor; the Chapter 13 estate continues to exist and 'refills' with property defined in § 1306 that is acquired by the debtor after confirmation, without regard to whether that property is necessary to performance of the plan." *In re Baker*, 620 B.R. at 663 (citing LUNDIN).

These facts are undisputed. Debtor listed the Van Buren Property on her Schedule A/B at $250,000. Her plan was confirmed on July 31, 2021; following confirmation, the Van Buren Property significantly appreciated in value—selling for $435,000. With the Trustee's consent, the Court approved the sale, Debtor sold the Van Buren Property, and the Sale Proceeds are being held in the Debtor's attorney's IOLTA account. Application of the Estate Replenishment approach vests the Van Buren Property in the Debtor at confirmation.

9

The Court finds the Van Buren Property was property of the estate until it confirmed Debtor's Plan. Following confirmation, the Van Buren Property vested in Debtor. The estate continues to exist and will "refill" with any property acquired post-confirmation. The Court now pivots to whether the Sale Proceeds are newly acquired post-confirmation property that refill the estate.

### B. Post-Confirmation Sale Proceeds Cannot Be Separated from the Debtor's Pre-Confirmation Property from Which They Were Derived

Sale Proceeds must fall into either one of two categories to be considered post-confirmation estate property: (1) under the Estate Replenishment approach, the Sale Proceeds refill the bankruptcy estate post-confirmation because they are newly acquired property of the Debtor; or (2) the Sale Proceeds are disposable income encompassed by 11 U.S.C. § 1325. Neither categorization is persuasive.

#### 1. The Sale Proceeds do not refill the estate

Several courts have addressed whether proceeds from the sale of prepetition property derived from post-confirmation appreciation are newly acquired property of a debtor. Unsurprisingly, courts have come down on both sides of the issue. The Court adopts what it believes is the better-reasoned line of cases and holds the Sale Proceeds cannot be untethered from the underlying Van Buren Property and therefore, are not a newly acquired asset of Debtor.

Courts have determined chapter 7 bankruptcy estates capture appreciation of prepetition property as property of the estate, despite proceeds being attributable to post-petition appreciation. *See e.g., Coslow v. Reisz,* 811 Fed. App'x 980 (6th Cir. 2020); *In re Lents,* 644 B.R. 479 (Bankr. D. S.C. 2022). The Court finds it unnecessary to look to Code provisions governing chapter 7 estate property when Debtor received the protections of the chapter 13

bargain.  The Court looks to sections 1306, 1335, and 1327, and the chapter 13 case law relying

on these sections, to guide its decision.

Even when a chapter 13 case is converted to a chapter 7, courts have found appreciation

of prepetition property is property of the estate.  *See In re Adams,* 641 B.R 147 (Bankr. W.D.

Mich. 2022).[9]  The Trustee's Brief relies on the *Adams* holding to suggest a chapter 13 debtor's

post-confirmation sale proceeds from prepetition real estate are property of the bankruptcy

estate.  *See id*.  But the *Adams* holding does not extend to the circumstances here because, unlike

in *Adams*, Debtor did not convert to a chapter 7.

In *Adams*, the debtors converted their chapter 13 case to a chapter 7 and attempted to

retain post-confirmation appreciation of real property, post-conversion.  *In re Adams*, 641 B.R.

147 (Bankr. W.D. Mich. 2022).  The court never contemplated sections 1306 and 1327, but

relied mainly on 11 U.S.C. § 348(f) to determine whether property belonged to the debtor or to

the estate.  *Id*.  Section 348—Effect of Conversion—is not applicable here as Debtor did not

convert to a chapter 7.  However, a chapter 13 debtor who converts to a 7, does lose the benefit

of the bargain given to a chapter 13 debtor.  The *Adams* court drove this point home, stating

"chapter 13 still presents the best avenue for debtors to retain property in bankruptcy, and the

unqualified right to dismiss their chapter 13 proceedings protects them from any adverse

consequences of conversion to chapter 7." *In re Adams*, 641 B.R. at 156.  Debtor retains the

benefit of her bargain struck at confirmation.

---

[9]The *Adams* court relied on the Sixth Circuit's reasoning in *Coslow v. Reisz*, where a chapter 7 debtor
brought an adversary proceeding to compel the trustee to abandon his residential property.  The debtor in
*Coslow* filed under chapter 7, and the Sixth Circuit's reasoning as to property of the chapter 7 estate is not
binding when resolving estate property issues in a chapter 13 case.  *See Coslow v. Reisz,* 811 Fed. App'x
980 (6th Cir. 2020).

Moreover, a debtor's chapter 13 protections are distinguished from that of a debtor's chapter 7 protections. The Supreme Court framed this distinction clearly in *Hamilton v. Lanning*:

> Chapter 13 of the Bankruptcy Code provides bankruptcy protection to "individual[s] with regular income" whose debts fall within statutory limits. 11 U.S.C. §§ 101(30), 109(e). Unlike debtors who file under Chapter 7 and must liquidate their nonexempt assets in order to pay creditors, see §§ 704(a)(1), 726, Chapter 13 debtors *are permitted to keep their property*, but they must agree to a court-approved plan under which they pay creditors out of their future income.

*Hamilton v. Lanning*, 560 U.S. 505, 508 (2010) (emphasis added).

The Supreme Court in *Bullard v. Blue Hills Bank*, clarified its stance with respect to section 1327's vesting language stating "[s]ubject to certain exceptions, confirmation 'vests all of the property of the [bankruptcy] estate in the debtor' and renders that property 'free and clear of any claim or interest of any creditor provided for by the plan.'" 575 U.S. 496, 502 (2015) (citing 11 U.S.C. § 1327(b), (c)).

Many decisions, nationwide, align with this Court's finding. *See e.g., In re Euler*, 251 B.R. 740, 747–48 (Bankr. M.D. Fla. 2000) ("As stated by Judge Jennemann in *In re Meeks,* 237 B.R. 856, 861, 'A debtor who decides to retain collateral at a confirmation hearing is entitled to any later appreciation in value but also must suffer any resulting depreciation or loss.'" (citations omitted)); *In re Burgie*, 239 B.R. at 410 ("The chapter 13 deal permits a debtor to retain all prepetition property, including earnings, assets, money in the bank and real estate."); *In re Mobley*, 2011 WL 6812551, at *2 ("'Under a chapter 13 plan, the debtor is entitled to keep all of the debtor's prepetition property' and includes prepetition proceeds…" (quoting *In re Burgie*, 239 B.R. at 410–11)); *In re Ash'shadi*, 2005 WL 1105039, at *3 ("As explained above, the

proceeds from the sale of a prepetition asset do not become property of the chapter 13 estate. . .").

The court in *Burgie* laid the framework for a line of cases, which have followed the *Burgie* court's analysis of chapter 13's protections—including two cases decided in the Eastern District of Michigan. *See e.g., In re Burgie*, 239 B.R. 406 (B.A.P. 9th Cir. 1999); *In re Euler*, 251 B.R. 740 (Bankr. M.D. Fla. 2000); *Black v. Leavitt (In re Black)*, 609 B.R. 518 (B.A.P. 9th Cir. 2019); *Willard v. Preuss (In re Willard)*, No. 21 Civ 10220, 2023 WL 2601769 (S.D.N.Y. March 22, 2023); *see also In re Ash'shadi*, No. 04-55924, 2005 WL 1105039 (Bankr. E.D. Mich. May 6, 2005) and *In re Mobley*, No. 11-49079, 2011 WL 6812551 (Bankr. E.D. Mich. Dec. 1, 2011).

In *Burgie*, chapter 13 debtors sold their prepetition homestead five days post-confirmation. *In re Burgie*, 239 B.R. at 408. The debtors proposed to use the $63,000 in sale proceeds to purchase a new residence. *Id*. The trustee did not object to debtors' original proposal to dedicate *all* of the post-confirmation sale proceeds to the purchase of a new residence. *Id*. The trustee only objected to debtors' subsequent proposal to use $43,000 of the sale proceeds as a down payment on a new residence, and retain $20,000 "to support themselves and help complete their plan." *Id*. The trustee moved to modify the debtors' plan to require any sale proceeds *not* utilized in the purchase of a new residence to be turned over to the trustee to "provide 100% distribution" to unsecured creditors. *Id*.

The Bankruptcy Appellate Panel for the Ninth Circuit affirmed the bankruptcy court's decision denying the trustee's motion. *Id*. at 412. The court held "debtors cannot be compelled to use the proceeds from the sale of prepetition real estate to pay creditors under a confirmed

chapter 13 plan." *Id*. at 410.   And despite debtors retaining $20,000 of the sale proceeds, the court further stated "[w]hile a debtor may voluntarily use such proceeds to make payments to creditors under a chapter 13 plan, a debtor cannot be compelled to use the proceeds for this purpose." *Id.* at 409.  The Court finds this reasoning persuasive, but does not expand its finding to the extent of the *Burgie* court.

The circumstances here are well within the scope of what the *Burgie* court saw fit for a chapter 13 debtor's post-confirmation sale proceeds.  Debtor sold her homestead not five days, but over 20 months after confirmation.[10]  Furthermore, the trustee in *Burgie* did not object to the debtors' use of the sale proceeds to purchase a new residence.  Only when debtors proposed to retain $20,000 of the proceeds did the trustee object.  Therefore, the Court limits its holding to Debtor's specific request: she may use the Sale Proceeds solely to purchase a new residence.[11] The Sale Proceeds must remain in the IOLTA account until transferred directly to close on a new residence.  And Debtor must close on said residence *on or before December 31, 2023*—unless the Court extends this deadline, for cause.

Widening the scope on chapter 13 protections, the Southern District Court of New York recently addressed the sale proceeds issue on appeal from the Bankruptcy Court stating "'[a]n examination of the basic structure of chapter 13 makes it clear that the debtors cannot be compelled to' turn over their prepetition property, whether post-confirmation as in *Burgie*, or

---

[10]  The Court entered an Order Confirming Plan on July 31, 2021 [Docket # 35] and the Order Approving Sale of Debtor's Real Property was entered on March 30, 2023 [Docket # 49].

[11] If the cost of the Debtor's new residence is less than the value of the Sale Proceeds, the fate of the excess Sale Proceeds can be addressed by the Trustee at that time.  The Court does not contemplate the possibility herein.

14

pre-confirmation, as here." *In re Willard*, 2023 WL 2601769, at *3 (citing *In re Burgie*, 239 B.R. at 410). The chapter 13 debtor in *Willard* sought to retain sale proceeds of his prepetition property in the amount of $354,333.77, and the trustee objected. *In re Willard*, 2023 WL 2601769. The sale of the debtor's property occurred pre-confirmation and the trustee argued that the sale proceeds were property of the estate, not the debtor's property. *Id*. The district court disagreed with the trustee and Bankruptcy Court, finding the bankruptcy court had abused its discretion in requiring the debtor to turn over the sale proceeds to the trustee. *Id*. at *3.

The court explained that "[c]ompelling a debtor to submit a pre-petition asset to the trustee, and thereby exposing such pre-petition asset to the creditors, runs counter to the congressional design evidenced by Chapter 13's language and structure." *In re Willard*, 2023 WL 2601769, at *3. The Debtor's Sale Proceeds here, arise from a post-confirmation sale and are derived from post-confirmation appreciation. If a debtor cannot be compelled to turnover pre-confirmation sale proceeds derived from pre-confirmation appreciation because "chapter 13 makes it clear that debtors cannot be compelled to turn over their prepetition property," then certainly the protections of chapter 13 further fortified with the post-confirmation protections of section 1327 shield the Debtor's Sale Proceeds here.

The Sale Proceeds are the Debtor's property pursuant to 1327, cannot be separated from the underlying real estate, and according to the Supreme Court "[c]hapter 13 debtors are permitted to keep their property." *Hamilton*, 560 U.S. at 508. Not only does Debtor receive the benefit the bargain struck with her creditors—without the benefit of foresight—but she also receives the fortified protections of section 1327 because the appreciation generating the Sale

15

Proceeds arose post-confirmation. Consequently, the Sale Proceeds will not refill the bankruptcy estate.

### 2. The Sale Proceeds are not Disposable Income within the Purview of 11 U.S.C. § 1325

Alternatively, the Sale Proceeds could be categorized as disposable income. If the Sale Proceeds were considered disposable income under 11 U.S.C. § 1325(b), Debtor could be compelled to contribute them to the plan. Because the Court finds the Sale Proceeds are not disposable income, Debtor cannot be compelled to turn them over to her creditors. The Trustee's proposed plan modification is denied as moot.

Section 1325(b)(1) states:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

Section 1325(b)(2) defines "disposable income" for the purpose of section 1325(b)(1) and provides in pertinent part:

> For the purposes of this subsection, "disposable income" means current monthly income which is received by the debtor and which is not reasonably necessary to be expended—

> (A) for the maintenance or support of the debtor or a dependent of the debtor....

16

11 U.S.C. § 1325(b)(2).

The Trustee suggests that Debtor must propose a post-confirmation plan modification as required by 11 U.S.C. § 1329, because the Sale Proceeds are disposable income not accounted for in her plan. Further, the Trustee asserts that because Debtor failed to propose a modification, the Trustee, pursuant to 11 U.S.C. § 1329(b)(1), proposed a post-confirmation plan modification to account for the Sale Proceeds. *Id*. The Court disagrees that (1) Debtor is required to propose a modification; and (2) that—under the particular circumstances here—the Trustee may propose a modification, as the Sale Proceeds are not disposable income. Debtor cannot be compelled to turn over any property that vested in her at confirmation.

### a. Trustee's Reliance on Sixth Circuit Cases Misses the Mark

The Trustee presents two Sixth Circuit Court of Appeals cases in attempt to drive home her argument that the Sale Proceeds are disposable income. These decisions would be binding if on point, however, their holdings do not apply here. *In re Freeman* involved a post-confirmation plan modification where the court required the debtor to turn over an unexpected surplus in a tax refund derived from prepetition wages. *Freeman v. Schulman (In re Freeman)*, 86 F.3d 478 (6th Cir. 1996). The tax refunds were for prepetition wages, and the Trustee purports that the *Freeman* decision reaches the circumstances in here—but it does not.

The debtor in *Freeman*, upon the realization her tax refund would be in excess of what the plan projected, attempted to exempt the excess under state law. *In re Freeman*, 86 F.3d at 479. In addition, the debtor "specifically identified that tax refunds should go to the plan and made no argument that the funds were needed for 'maintenance and support' of the debtor or her dependents." *Id*. at 481. The court held that the tax refund qualified as disposable income under section 1325. *Id*. However, the court also stated that "[s]ituations may arise where a debtor did

17

not specifically list tax refunds for inclusion in the plan and those situations would need to be examined on a case-by-case basis to decide whether a tax refund arising from pre-petition income qualified as 'projected disposable income.'" *Id.*

Debtor neither seeks to exempt the Sale Proceeds under state law nor purports use of projected proceeds from the sale of the Van Buren Property for "maintenance and support" of herself and her children. In fact, at confirmation, the projected sale of the Van Buren Property would have yielded nothing to unsecured creditors after paying secured creditors and Debtor's exemption. And although the Court does not need to look to *Freeman*, it does agree with the recognition that circumstances require "a case-by-case" analysis to determine what constitutes disposable income.

The Trustee also cited *In re Harchar*, which relied on *Freeman* to reach its decision also surrounding tax refunds. *Harchar v. United States (In re Harchar)*, 694 F.3d 639 (6th Cir. 2012). There, the Sixth Circuit held that the IRS was permitted to seek modification of debtor's plan to compel turnover of a post-confirmation tax refund for prepetition wages. *See id*. Appreciation of prepetition real estate that arose post-confirmation, generated the Sale Proceeds here—not prepetition wages. Real property sale proceeds are categorically different than tax refunds. While this Court agrees with the holdings in both *Freeman* and *Harchar*, neither applies under the facts of this case.

### b. Anticipated Stream of Payments

Instead of relying on *Freeman* and *Harchar*, this Court adopts the position that "disposable income does not include prepetition property or its proceeds." *In re Burgie*, 239 B.R. at 410. The test in *Burgie* is "whether the asset in question is an anticipated stream of payments.

If it is a stream of payments, the payments must be included in projected income. If the asset is not a stream of payments, it is not included." *Id*. (internal citations omitted).

The court goes on to distinguish a debtor's primary residence from income:

> The sale of a capital asset does not create "disposable income" pursuant to § 1325. Disposable income under § 1325 is postpetition income received by the debtor that is not reasonably necessary for the maintenance or support of the debtor or a dependant of the debtor. *See* § 1325(b)(2). A debtor's prepetition homestead is a capital asset, not postpetition income.

*Id*.

The court further states "[t]he proceeds of the sale of a debtors real estate in a chapter 13 case never become disposable income for the purposes of chapter 13." *Id*. at 409. The sale of a "capital asset" or a debtor's primary residence generates only a lump-sum payment; it is not an anticipated stream of payments. Although Debtor here planned from the outset to sell her property, not only would the sale generate a lump sum rather than a stream of payments, but the Sale Proceeds were certainly not anticipated. Again, the projected sale—based on the liquidation analysis—was expected to generate only $22,000 in proceeds. Therefore, the Sale Proceeds are not in the anticipated stream of payments for the "maintenance and support" of Debtor's family.

Moreover, as discussed above, the debtors in *Burgie* were not only allowed to use their sale proceeds as a down payment on a new residence, but were permitted to keep $20,000 "to support themselves." *In re Burgie*, 239 B.R. at 408. Despite the debtors actually realizing some of the sale proceeds rather than rolling over all them into a new residence, the court stated "a debtor's homestead is a capital asset" and "[t]he sale of a capital asset does not create disposable

income pursuant to § 1325." *Id*. at 410. Debtor proposes to use the Sale Proceeds, in their entirety, to purchase a new residence. The Debtor does not realize any income as defined in section 1325, but is merely rolling over the Sale Proceeds directly into a new (replacement) homestead. The Court holds that the Sale Proceeds are not disposable income insofar they are used solely to purchase Debtor's new homestead. The Court does not make a determination as to the fate of any excess Sale Proceeds above and beyond the new-residence purchase price.

The Court also acknowledges, as the Trustee points out, that the facts of *Mobley* and *Ash'shadi* are different from those here. However, the Court looks to cases in this district not for factual identity but for its application of the stream of income test in a chapter 13 case. Both *Mobley* and *Ash'shadi* apply the stream of income test in a chapter 13 case, and this Court does the same. *See In re Mobley*, 2011 WL 6812551, at *2 ("Chapter 13 contemplates making available an ongoing stream of regularly anticipated income out of which plan payments are to be calculated and made."); *see also In re Ash'shadi*, 2005 WL 1105039, at *3 ("The cases cited by the Trustee in his brief do not control the disposition of the instant case because they all involve a stream of income, or a payment which replaces income, rather than the post-confirmation sale of a pre-petition asset. Specifically, *In re Freeman,* 86 F.3d 478 (6th Cir.1996) involved a post-petition tax refund related to pre-petition income."). The *Ash'shadi* court offered the same argument this Court presented above distinguishing *Freeman*: post-petition tax refunds derived from prepetition income are drastically different from proceeds from the sale of a chapter 13 debtor's primary residence. *See id*. The Court finds that the Sale Proceeds are not disposable income.

### C.     *The Trustee's Proposed Post-Confirmation Plan Modification*

The Court does not reach this issue as Debtor cannot be compelled to turn over the Sale Proceeds to the be distributed to general unsecured creditors.  The Plan Modification is denied as moot.

## V.     CONCLUSION

More than 20 years ago, the Sixth Circuit determined it would be an "unlikely congressional intent" to give Chapter 13 debtors–post-confirmation—"the option to shift the burden of depreciation to a secured creditor by reclassifying the claim and surrendering the collateral when the debtor no longer has any use for the devalued asset." *Chrysler Fin. Corp. v. Nolan (In re Nolan)*, 232 F.3d 528, 533 (6th Cir. 2000).  In other words, Chapter 13 debtors assume the risk of depreciation in their revested assets.  It stands to reason they should also enjoy the benefit of any post-confirmation appreciation of revested property when sold.

The Court finds the Estate Replenishment approach best reconciles the disparities between 11 U.S.C.§§ 1306 and 1327, and that—at confirmation—all property of Debtor's chapter 13 bankruptcy estate vested in her.  The bankruptcy estate continues to exist and can be refilled with a debtor's newly acquired post-confirmation property.

The Sale Proceeds are not newly acquired property as they cannot be untethered from the underlying Van Buren Property.  The appreciation of the Van Buren Property occurred post-confirmation, which vested with the Debtor at confirmation.  *See* 11 U.S.C. § 1327.  Thus, the Debtor "cannot be compelled to turn over prepetition property."  Furthermore, the Sale Proceeds are not disposable income as they are not in the anticipated steam of payments.  Accordingly,

Debtor may use all of the Sale Proceeds to purchase a new residence *on or before December 31, 2023*, unless the Court extends this deadline, for cause. The Trustee's Objection is **OVERRULED**, and her Plan Modification is **DENIED** as moot.

> **IT IS ORDERED**.

**Signed on August 28, 2023**



/s/ Mark A. Randon

**Mark A. Randon**
**United States Bankruptcy Judge**